United States District Court
Southern District of Texas
**ENTERED**
March 20, 2023
Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DEWAYNE LEE WALDRUP, | § | |
| TDCJ # 02351122, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-3451 |
| | § | |
| SHERIFF RAND HENDERSON, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dewayne Lee Waldrup, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), filed this lawsuit under 42 U.S.C. § 1983 and alleges that multiple officials in Montgomery County violated his civil rights during his detention and criminal proceedings. Waldrup proceeds *pro se* and *in forma pauperis*. Because this case is governed by the Prisoner Litigation Reform Act (PLRA), the Court is required to scrutinize the pleadings and dismiss the complaint, in whole or in part, if it is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A.  After reviewing the pleadings, the applicable authorities, and all matters of record, the Court determines that Waldrup's claims should be **DISMISSED in part** for lack of subject matter jurisdiction and for failure to state a claim, and that the remaining claims should be **STAYED** and **ADMINISTRATIVELY CLOSED.**  In addition, Waldrup's motions for injunctive relief (Dkt. 33; Dkt. 39) will be **DENIED** as moot.  The Court's reasons are explained below.

## I.  BACKGROUND

### A. Procedural Background

Waldrup was arrested on October 25, 2019, and faced criminal charges in the 435th District Court of Montgomery County. He filed this case on October 6, 2020, when detained in the Montgomery County Jail.  Although Waldrup was charged in three criminal cases, two of the cases were later dismissed.[1]  On May 27, 2021, while this civil rights case was pending, Waldrup was convicted of possession of a controlled substance in the third case, Case No. 20-10-12141, and was sentenced to 50 years in TDCJ.[2]  He then filed an appeal, which currently is pending in the Ninth Court of Appeals, Case No. 09-21-00154-CR.[3]  On June 28, 2021, Waldrup was transferred to TDCJ (Dkt. 35, at 1).

Waldrup submitted a complaint (Dkt. 1), a more definite statement of his claims (Dkt. 15), and a supplemental more definite statement (Dkt. 16).  On September 23, 2021, the Court granted Waldrup leave to file an amended complaint (Dkt. 19-1) and denied his request for injunctive relief.  See Dkt. 23.  In the same order, the Court severed Waldrup's claims against judges, prosecutors, law enforcement officers, parole officers, and his

---

[1]      See District Clerk Court Records Inquiry, Montgomery County (available at http://odyssey.mctx.org/unsecured/default.aspx) (last visited Mar. 19, 2023) (Case No. 19-10-14607 for fraudulent possession of identifying information was dismissed on May 27, 2021; Case No. 19-10-14608 for possession with intent to deliver/manufacture a controlled substance was dismissed on Dec. 17, 2020).

[2]      See id. (Case No. 20-10-12141); Inmate Information Search, available at https://inmate.tdcj.texas.gov/InmateSearch (last visited Mar. 19, 2023).

[3]      See Case Information, Texas Judicial Branch, available at http://search.txcourts.gov/CaseSearch.aspx?coa=cossup=c (last visited Mar. 19, 2023) (Case No. 09-21-00154-CR).

defense attorney into a separate civil action.  *See Waldrup v. Judge Maginnis*, Civil Action No. 4:21-3106 (S.D. Tex.).   The Court then ordered Waldrup to submit a second supplemental more definite statement.  *See* Dkt. 25.

On January 18, 2022, the Court dismissed this suit under Federal Rule of Civil Procedure 41 for want of prosecution (Dkt. 30). On September 6, 2022, after Waldrup submitted his second supplemental more definite statement (Dkt. 35), the Court reinstated the case (Dkt. 38).  Waldrup has filed motion for a temporary restraining order (Dkt. 33) and a motion for permanent injunctive relief (Dkt. 39), which are pending the Court's decision.

### B.  Factual Background

After severance and amendments to pleadings, this suit carries Waldrup's claims against the following defendants from Montgomery County: (1) Sheriff Rand Henderson; (2) District Attorney Brett Ligon; (3) "all district judges"; and (4) the grand jury commissioners. He alleges that the defendants (1) engage in a conspiracy against civil rights; (2) use a "wealth-based detention" system; and (3) abuse the grand jury process (Dkt. 19-1, at 3; *see* Dkt. 1).  He also claims that the conditions in the Montgomery County Jail were constitutionally inadequate (Dkt. 1). Waldrup submitted several statements (Dkt. 15; Dkt. 16; Dkt. 35) responding to the Court's questions about how each defendant violated his rights and how he personally was harmed.  He seeks declaratory and injunctive relief from all defendants (Dkt. 1, at 5; Dkt. 15, at 13-14; Dkt. 19-1, at 4; Dkt. 35-1, at 25-

33).  He also seeks monetary damages from Henderson (*id*. at 34-35; *see* Dkt. 1, at 12; Dkt. 19-1, at 4).

### 1.  Conspiracy

Waldrup alleges that the defendants engaged in a sweeping conspiracy to deprive him and other criminal detainees of their constitutional rights through unlawful policies and practices (Dkt. 35, at 5-9).  He claims that the conspiracy is designed to give Montgomery County an advantage over its citizens:

> [Officials implemented] policies and practices that disregarded a citizen's federally protected rights to access the courts, to be free from unlawful search and seizure, to be free from vindictive and selective prosecution, to be free from malicious and wrongful prosecution, to be free from excessive bail, to be free from excessive punishment, to be free from oppressive pretrial incarceration, right to counsel, rights to speedy/fair/[] public trial, rights to an impartial tribunal, rights to substantive and procedural due process and equal protection of the laws in order to give Montgomery County as a municipality the advantage over the proceedings.

(*id*. at 6; *see id.* at 9 (alleging that the system is designed to "achieve and maintain an abnormal conviction rate" and advance the careers of officials)).  He claims that the conspiracy violated his right to a fair trial because he was "falsely and wrongfully arrested, falsely and wrongfully imprisoned, unlawfully searched and seized, maliciously investigated, and maliciously and wrongfully prosecuted and convicted;" because his appointed counsel worked to sabotage his defense; and because the judge "demonstrate[d] extreme bias" and "intentionally refused to follow state and federal law," among other reasons (*id*. at 10-12).

In response to the Court's questions about the defendants' involvement in the conspiracy, Waldrup alleges that Henderson is liable because he is a "final policymaker" for the county but failed take multiple actions, including implementing a plan to ensure the release of a detainees who do not receive a timely probable cause hearing; ensuring qualified jurors for Waldrup's criminal cases; ensuring that exculpatory materials were turned over in Waldrup's cases; and preventing seizure of detainees' cell phones without a warrant (*id*. at 16-20).  He alleges that Ligon and his staff "routinely engage in prosecutorial misconduct," including witness tampering, selective prosecution, withholding exculpatory evidence, and "dry charging" (*id*. at 21-24).[4]  He alleges that the Montgomery County district judges appoint defense attorneys for indigent defendants who "go along to get along" in a "pay for play" culture; fail to inquire about a defendant's ability to pay cash

---

[4]     Waldrup describes "dry charging" as a Montgomery County practice to shield arresting officers from suit for civil rights violations and to move forward with criminal cases in the absence of probable cause:

> Dry-charging occurs where the acting duty assistant district attorney, using criminal charges as a prophylactic to protect arresting officers and their departments facing potential liability for unlawful search and seizures, and excessive force incidents from civil suits, accepts charges on a criminal suspect based on information that establishes less than probable cause to support the charged offense. Routinely the District Attorney's legal assistant, or some other unknown person acting on behalf of the District Attorney's office, initiates or procures the prosecution by swearing out a criminal complaint before a colleague assistant district attorney, taking on the role of that as a witness and not an advocate for the State, causing the prosecution to move forward without the prerequisite of probable cause.

(Dkt. 35, at 23; *see* Dkt. 35-1, at 13-25). He claims that he was harmed by the practice because, at his arrest without a warrant on October 25, 2019, the deputies "expressed or implied concern about potential officer and department liability for false arrest," but personnel from the district attorney's office "advised the deputies on the best way to proceed" and acted with the deputies to "fabricate[] and . . . perpetuate the false narrative of 'attempted burglary of a motor vehicle'" (*id*. at 16).

5 / 23

bail; conspire with county officials to approve improper warrants; and refuse to follow the law (*id*. at 25-27).

### 2.  Wealth-based detention

Waldrup alleges that Montgomery County's policies permit "wealth-based detention" because criminal detainees with financial means can gain release from detention while detainees without financial means are left to "linger[] in the Montgomery County Jail, in some cases for years" (Dkt. 35, at 7).  He alleges that county judges and other officials routinely set bail higher for "indigent African American defendants . . . than [for] their similarly situated white counterparts" and appoint counsel for indigent criminal defendants who engage in a "pay to play" system (*id*. at 7-8).  He claims that the policy caused a violation of his rights when he was detained "without bail and excessive bail" due to his inability to post bail of $10,000 and $120,000 in connection with his "non-violent low-level drug offense" (*id*. at 29).

In response to the Court's questions regarding the defendants' liability for the wealth-based detention system, Waldrup alleges that Henderson detained him for more than 48 hours after his arrest without a probable-cause determination or "a valid order of commitment," as part of a conspiracy to "unlawfully gather and detain citizens" and thus generate additional revenue for the county (*id*. at 30-33).  He alleges that Ligon, as final policy maker for the district attorney's office, is responsible for a bail schedule that is designed to generate revenue and uses preset bail amounts "without first taking into consideration a[] detainee's eligibility for release on non-financial conditions or inability

to pay" (*id*. at 33-35).  He alleges that the Montgomery County district judges are responsible for the county's indigent defense plan but fail to appoint counsel at the initial bail hearing, "promote[] cronyism," and engage in a conspiracy whose goals include "a steady flow of detainees" and revenue for the county (*id*. at 35-36; Dkt. 35-1, at 1-2). He alleges that the Montgomery County grand jury commissioners are liable because they have "assessed a fee system that has a built-in and constant temptation" for officials to generate revenue for themselves "at the expense of citizens" (*id*. at 2-4).

### 3.     Abuse of grand jury process

Waldrup claims that Montgomery County officials abused the grand jury process during his criminal proceedings, causing him to be "unlawfully detained" and "falsely and wrongly imprisoned;" preventing him "from mounting [a] defense;" and resulting in a TDCJ "parole hold" against him that exceeded statutory time limits (*id.* at 5-6).  He alleges that Henderson is liable because, although he is statutorily responsible for summoning qualified grand jurors, he failed to ensure qualified jurors  in Waldrup's cases and conspired to impanel jurors who would ensure a high conviction rate (*id*. at 6-8).  He alleges that Ligon was aware that the grand jury system was being abused but "failed to report the constitutional violations," acquiescing in the system for his financial and political gain (*id*. at 9-11). He alleges that the Montgomery County district judges failed to test the qualifications of potential grand jurors and compiled lists of "people the judges know are likely to seek conviction" (*id*. at 11-12).

### 4.    Jail conditions

Waldrup alleges that Henderson is liable for inadequate conditions at the Montgomery County Jail, including inadequate protection from COVID-19; nutritionally inadequate food; unsanitary conditions; failure to evaluate detainees' mental health; and inadequate phone and law library services (Dkt. 1, at 13-15; *see* Dkt. 15 (more definite statement); Dkt. 16 (supplement)).

Regarding COVID-19, Waldrup stated on December 21, 2020, that he had not had symptoms of, or been diagnosed with, COVID-19 (Dkt. 15, at 2).  On January 6, 2021, he filed a supplement stating that he recently had been ill with severe back pain, nausea, vomiting, breathing problems, and loss of taste, but that he had not been tested for COVID-19 (Dkt. 16, at 2-3).  He also stated that jail personnel gave him medications (*id.* at 3). Although Waldrup alleges that Henderson is responsible for inadequate distancing and sanitation at the jail (Dkt. 15, at 5-9), he failed to answer the Court's specific questions about Henderson's awareness of, or response to, specific risks to him. *See* Dkt. 10, at 5-8 (Questions 5(e), 6(d) & (e), and 7(e) &(f)).  His supplemental statement also provides no specific allegations about Henderson's involvement.  However, he claims that, as "final policymaker" for the jail, Henderson is responsible for deciding how many arrests his deputies make and which types of arrests "should be prioritized as jailable offenses" (Dkt. 15, at 5).

Regarding other jail conditions, the Court asked Waldrup to provide details about his claims regarding nutrition and sanitation (Dkt. 10, at 8-10 (Question 8)).  In his

response, Waldrup alleged that the soy product served at the jail had "no nutritional value," that the meals were insufficient and caused excessive gas, that the serving trays were exposed to contaminated water and mold, and that trays and dishes were inadequately cleaned (Dkt. 15, at 9-12).  He did not respond to the Court's questions about Henderson's involvement with the alleged violations or his awareness of any specific risk to Waldrup. *See* Dkt. 10, at 9-10 (Question 8(d)-8(g)).

## II.   LEGAL STANDARDS

### A.   Screening Standards

Because the plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required by the PLRA to screen the case and dismiss the complaint at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).  A district court may dismiss a claim as frivolous if it lacks any arguable basis in law or fact.  *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).  A claim lacks an arguable basis in law "if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up).  It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

A dismissal under § 1915A(b) or § 1915(e)(2)(B) for failure to state a claim is governed by the same standard as a motion under Rule 12(b)(6) of the Federal Rules of

Civil Procedure. *See Newsome v. EEOC,* 301 F.3d 227, 231 (5th Cir. 2002). Under this standard, a court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). A court may dismiss a case *sua sponte* and without notice to the plaintiff if the plaintiff has pleaded his best case or if the dismissal is without prejudice. *Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016); *see Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (holding that a court may *sua sponte* dismiss for failure to state a claim "as long as the procedure employed is fair") (cleaned up); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) (holding that where the pleadings, viewed under the individual circumstances of the case, "demonstrate that the plaintiff has pleaded his best case," dismissal on the pleadings is appropriate if the pleadings do not adequately state a cause of action).

### B.    Subject Matter Jurisdiction

A federal court has jurisdiction to determine its own jurisdiction. *See Trinity Marine Prod., Inc. v. U.S.*, 812 F.3d 481, 486 (5th Cir. 2016). The court has the "responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2016) (cleaned up). Federal Rule of Civil Procedure 12(h)(3) requires a court to dismiss an action at any time if the court determines that it lacks subject matter jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (cleaned up).  A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013).  The court must take as true the complaint's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

## C.   *Pro Se* Pleadings

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff proceeds *pro se*.  Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up).  Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal

theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005).

## III.   <u>DISCUSSION</u>

Waldrup alleges broad civil rights violations by Montgomery County officials. Because many of his claims do not allege particularized injury to himself, and because many seek declaratory or injunctive relief, the Court first addresses the jurisdictional issues of standing and mootness.  To the extent Waldrup identifies personal harm, his allegations pertain to either his criminal proceedings or to the conditions at the Montgomery County Jail, which the Court below addresses in turn.

### A.   <u>Subject Matter Jurisdiction</u>

Because jurisdiction is a threshold issue, a court has an obligation to examine its own jurisdiction.  *See Crutchfield*, 829 F.3d at 375. The Court therefore *sua sponte* addresses whether it has subject matter jurisdiction over Waldrup's claims, in particular, the issues of standing and mootness.

#### 1.   Standing

The question of whether Waldrup has legal standing to bring his claims is essential to the Court's subject matter jurisdiction. Article III, Section 2 of the Constitution limits the jurisdiction of federal courts to "cases" or "controversies."  *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 71 (2013). The requirement that a litigant must have standing to invoke the power of a federal court is "one of the controlling elements in the definition of a case or controversy under Article III."  *Hein v. Freedom from Religion Found., Inc.,* 551

U.S. 587, 598 (2007) (cleaned up).  To establish Article III standing, a plaintiff's injury must be (1) "concrete, particularized, and actual or imminent"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see Barilla v. City of Houston, Tex.*, 13 F.4th 427, 431 (5th Cir. 2021).  The Supreme Court has emphasized that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both "concrete *and* particularized." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 334 (2016) (emphasis original).  To be concrete, the injury must "actually exist" and not be abstract; to be particularized, it "must affect the plaintiff in a personal and individual way."  *Id.* at 339-340.  As the party invoking federal jurisdiction, a plaintiff bears the burden to establish these elements and "must clearly allege facts demonstrating each element."  *Id.* at 338 (cleaned up).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing."  *Stallworth v. Bryant*, 936 F.3d 224, 230 (5th Cir. 2019).

In its order for a second supplemental more definite statement, the Court asked detailed questions about specific harm to Waldrup based on the defendants' conduct.  To the extent Waldrup identifies personal harm, his allegations pertain to his criminal proceedings (addressed below in Section III.B) or to the conditions at the Montgomery County Jail (addressed below in Section III.C).  For the remainder of his claims, Waldrup does not identify any injury that is personal and individual. *See*, *e.g.*, Dkt. 35, at 5-7 (alleging generally that Henderson and other officials conspire to disregard citizens' rights

and to generate revenue for the Montgomery County); *id*. at 21 (alleging that the district attorney and his staff "routinely engage" in prosecutorial misconduct); Dkt. 35-1, at 2-3 (alleging that the grand jury commissioners have created a fee system to compensate judges); *id*. at 4-5 (alleging that grand jury commissioners used commissioners' court to generate revenue for officials at the expense of citizens).

Waldrup's claims that do not allege personal and concrete injury will be dismissed for lack of standing.

### 2.    Mootness

The threshold issue of mootness is also essential to the constitutional case-or-controversy requirement.  *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413, 424-25 (5th Cir. 2013); *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990).  The mootness doctrine "requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process."  *Id.*  When intervening circumstances "render the court no longer capable of providing meaningful relief to the plaintiff," mootness applies.  *Ctr. for Biological Diversity*, 704 F.3d at 425.

Here, Waldrup seeks declaratory and injunctive relief from the defendants, all of whom are Montgomery County officials (Dkt. 1, at 5; Dkt. 15, at 13; Dkt. 19-1, at 4; Dkt. 35-1, at 25-33).  He seeks vast changes to the county's procedures and practices in criminal cases, including those for release of detainees, collection of evidence, bail, and indigent

defense.[5]   However, since filing this lawsuit, Waldrup's criminal proceedings in the Montgomery County courts have concluded, his case is on appeal, and he has been transferred to the custody of TDCJ.

The Fifth Circuit has held that injunctive and declaratory relief cannot remedy a past harm:

> Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements. The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries. Because injunctive and declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury.

*Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (footnotes omitted); *see Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (inmate's transfer to a different correctional institution "rendered his claims for declaratory and injunctive relief moot"); *Pagoaga-Castro v. Pierson*, 790 F. App'x 652 (5th Cir. 2020) (same).  Because Waldrup is no longer in Montgomery County custody, the defendants cannot provide him with any prospective relief.

---

[5]       *See*, *e.g.*, *id.* at 26-27 (seeking injunction requiring Henderson to create intake and release plans for detainees, to implement new evidence-collection protocols, and to reform county policies regarding body or dashboard cameras for law enforcement, among other reforms); *id.* at 29-30 (seeking injunction prohibiting Ligon from "dry charging," from using the county bail schedule, and from otherwise conspiring and engaging in lawless conduct, among other relief); *id.* at 30-31 (seeking injunction requiring Montgomery County district judges to establish a public defender service, to hold individual bail hearings, and to record all probable cause proceedings, among other reforms); *id.* at 33 (seeking injunction prohibiting the grand jury commissioners from unjustly enriching themselves, among other relief).

Waldrup's claims for declaratory and injunctive relief from Montgomery County defendants are moot and the Court lacks subject matter jurisdiction. The claims therefore will be dismissed under Federal Rule of Civil Procedure 12(h)(3).

### B.     *Heck*-Barred Claims

As stated above, Waldrup brings claims of conspiracy, wealth-based detention, and abuse of the grand jury system. In these claims, he alleges that he suffered harm in connection with his criminal proceedings.[6] A claim under 42 U.S.C. § 1983 that bears a relationship to a conviction or sentence is not cognizable unless the conviction or sentence has been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). To recover damages based on allegations of "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a civil rights plaintiff must prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Id*. at 487. If a judgment in favor of a civil rights plaintiff "would necessarily imply the invalidity of his conviction or sentence," then the complaint "must be dismissed unless the

---

[6]     *See*, *e.g.*, Dkt. 35, at 10-11 (alleging that he was falsely arrested and detained; "maliciously investigated;" wrongfully prosecuted; subject to "malicious" delay in his court dates; and subject to the "extreme bias and prejudice" of the presiding judge who sought to "intimidate" him "as an indigent, *pro se*, African-American defendant"); *id.* at 17-20 (alleging that Henderson failed to ensure that grand jurors in his criminal cases were qualified, that exculpatory evidence was turned over to the defense, and that other rights in connection with Waldrup's criminal proceedings were protected); Dkt. 35-1, at 6 (alleging that the grand jury process in his case caused him to be unlawfully detained and wrongfully prosecuted); *id.* at 16 (alleging that personnel from the sheriff's department and the district attorney's office fabricated a false narrative regarding Waldrup's criminal activity in order to mislead the court).

plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* The Supreme Court has unequivocally stated that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis removed).

Here, a finding in Waldrup's favor on his claims regarding his criminal proceedings would necessarily imply that his conviction is invalid. Therefore, he is entitled to proceed with his § 1983 claim only if the judgment against him has been reversed or otherwise called into question. However, public court records do not reflect that his conviction or sentence for possession of a controlled substance (Case No. 20-10-12141) has been invalidated or otherwise set aside. Because his allegations in this lawsuit implicate the validity of his criminal conviction, *Heck* precludes his claims under § 1983 until he can demonstrate that his conviction or sentence has been invalidated. *See Wilkinson,* 544 U.S. at 81-82; *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998) (en banc). [7]

Although Waldrup was convicted in the trial court, his appeal is not yet complete. The Supreme Court has explained that, when criminal proceedings are ongoing, the best

---

[7]     The Court notes that Waldrup's two other criminal cases did not result in a conviction. *See* District Clerk Court Records Inquiry, Montgomery County (available at http://odyssey.mctx.org/unsecured/default.aspx) (last visited Mar. 19, 2023) (Case No. 19-10-14607 & Case No. 19-10-14608). However, in making his claims, Waldrup generally does not distinguish between the three cases and, moreover, at times specifically seeks relief based on Case No. 20-10-12141. *See, e.g.*, Dkt. 35, at 29; Dkt. 33, at 1-2.

practice is for the district court to stay the civil rights case until the pending criminal case is resolved.  *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *see Hopkins v. Ogg*, 783 F. App'x 350, 355 & n.20 (5th Cir. 2019) (citing *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995)).  The Court therefore will stay and administratively close this case until the appeal from Case No. 20-10-12141 is fully resolved. If Waldrup's conviction is upheld on appeal, *Heck* will require dismissal of any claims in this lawsuit that would imply the invalidity of his conviction until the *Heck* conditions are met.  *See Clarke*, 154 F.3d at 191; *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (explaining that claims barred by *Heck* are "dismissed with prejudice to their being asserted again until the *Heck* conditions are met").  If his conviction is invalidated, this lawsuit may proceed, absent some other bar to suit.  *See Wallace*, 549 U.S. at 394.

If Waldrup seeks to proceed with this suit after his criminal appeals have concluded, he is instructed to file a motion to reinstate this case **within 30 days** of the final appellate decision.  Failure to file a timely motion to reinstate could waive Waldrup's opportunity to proceed with this civil action.

### C.    Jail Conditions

Waldrup brings claims against Henderson regarding conditions at the Montgomery County Jail, seeking injunctive relief and monetary damages.  The Fourteenth Amendment protects the rights of pretrial detainees and requires the state to "tend to essentials of [the detainees'] well-being." *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2573 (2022); *Hare v. City of Corinth*, 74 F.3d 663, 638-39 (5th Cir. 1996). When

a detainee's claim is "based on a jail official's episodic acts or omissions," a court inquires "whether the official had a culpable state of mind in acting or failing to act." *Cope*, 3 F.4th at 206. A plaintiff is required to show that the official "had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Id.* at 207 (cleaned up).  When a detainee's claim "challenges general conditions, practices, rules, or restrictions of pretrial confinement," a court evaluates "whether the condition was reasonably related to a legitimate governmental objective." *Id.* at 206 n.5 (cleaned up).  "Conditions are not reasonably related to a legitimate governmental objective if they are arbitrary or purposeless"; the state may not constitutionally inflict punishment on pretrial detainees. *Id.* (cleaned up).  "To prevail on a conditions-of-confinement claim, a plaintiff must show a condition—a rule, a restriction, an identifiable intended condition or practice, or sufficiently extended or pervasive acts or omissions of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation."  *Sanchez v. Young Cnty., Texas*, 956 F.3d 785, 791-92 (5th Cir. 2020) (cleaned up).

A supervisory official such as Henderson may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (cleaned up); *see Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983").  A plaintiff seeking to establish "supervisor

liability for constitutional violations committed by subordinate employees . . . must show that the supervisor acted, or failed to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (cleaned up) (emphasis original).   A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

As an initial matter, for the reasons stated above, all of Waldrup's claims for declaratory or injunctive relief from Henderson regarding jail conditions are moot because Waldrup is now incarcerated in TDCJ, not the Montgomery County Jail. *See Stringer*, 942 F.3d at 720.   Additionally, some of his claims against Henderson are *Heck*-barred because they bear a relationship to the criminal proceedings against him. *See*, *e.g.*, Dkt. 15, at 12-13 (alleging that Henderson failed to train his subordinate officers regarding proper procedures during arrest and pre-trial proceedings); Dkt 35-1, at 34 (alleging that Henderson deprived him of liberty and property without legal justification).   To the extent Waldrup seeks monetary damages from Henderson, and his claims are not barred by *Heck*, the Court addresses his claims.

Regarding jail conditions during the COVID-19 pandemic, Waldrup alleges that Henderson is responsible for inadequate distancing and sanitation at the jail (Dkt. 15, at 5-9), but failed to answer the Court's specific questions about Henderson's awareness of any specific risk to Waldrup. *See* Dkt. 10, at 5-8, 10 (Questions 5(e), 6(d) & (e), 7(e) & (f), and 9(c) & 9(d)); Dkt. 15, at 5-9, 12-3; Dkt. 16).   To the extent he relies on his allegation that

Henderson failed as a policymaker to lower the number of arrestees during the COVID-19 pandemic so as to allow for social distancing (Dkt. 15, at 8-9), he fails to identify an "arbitrary or purposeless" condition of his confinement.[8]  He therefore does not adequately state a claim against Henderson regarding jail conditions during the COVID-19 pandemic. *See Cope*, 3 F.4th at 206-07 &  n.5.

Similarly, regarding nutrition and sanitation at the jail, Waldrup failed to answer the Court's specific questions about Henderson's involvement with the alleged violations or his awareness of any specific risk to Waldrup.  *See* Dkt. 10, at 8-10 (Question 8); Dkt. 15, at 9-12.  Therefore, as above, Waldrup fails to adequately allege a claim against Henderson. *See Cope*, 3 F.4th at 206-07 & n.5.

This Court must consider whether, taking all facts pleaded in the complaint as true, and with every doubt resolved on the plaintiff's behalf, the complaint states a valid claim for relief.  *Harrington*, 563 F.3d at 147.  If the plaintiff has pleaded his best case, the Court may dismiss a claim *sua sponte*. *Brown*, 829 F.3d at 370. In this case, the Court granted Waldrup's request to amend his pleadings and considered both the complaint (Dkt. 1) and amended complaint (Dkt. 19-1). The Court also issued two orders for more definite statements, and considered Waldrup's more definite statement (Dkt. 15); his supplemental statement (Dkt. 16); and his second supplemental statement (Dkt. 35).  The Court therefore is satisfied that Waldrup has pleaded his best case.  Because he fails to state a valid claim

---

[8]       In his second supplemental more definite statement, Waldrup identified an alleged county policy of "dry charging" (Dkt. 35-1, at 13-25), but did not identify any policy relevant to his claims against Henderson regarding jail conditions.

against Henderson regarding jail conditions, his claim will be dismissed for failure to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915A(b).

> **D.    Motions for Injunctive Relief**

Waldrup has filed two motions for injunctive relief.  First, he seeks emergency injunctive relief to enjoin Ligon from bad faith or vindictive prosecutions (Dkt. 33). Second, he seeks a permanent injunction to prevent all defendants and their officers, agents, or those working in concert with them, from enforcing the judgment against Waldrup and from "initiating, commencing, recommencing, reinitiating, continuing, or otherwise utilizing criminal prosecutions, in all Texas courts, as means to discourage litigants from seeking redress of civil grievances" (Dkt. 39, at 1-2).

As stated above, to the extent Waldrup's claims for declaratory or injunctive relief bear a relationship to his conviction, the claims are not cognizable unless the conviction has been invalidated.  *See Wilkinson*, 544 U.S. at 81-82. Additionally, his claims for injunctive or declaratory relief against Montgomery County officials are moot because he has been transferred to TDCJ and is no longer in the custody of Montgomery County.  *See Stringer*, 942 F.3d at 720. His motions for injunctive relief therefore will be denied.

## IV.   **CONCLUSION**

For the reasons stated above the Court **ORDERS** as follows:

1.    Waldrup's claims that do not allege particularized injury to himself are **DISMISSED** for lack of subject matter jurisdiction.

2.    Waldrup's claims for injunctive or declaratory relief are **DISMISSED** as moot.

3.  Waldrup's claims for monetary damages based on jail conditions are **DISMISSED** for failure to state a claim upon which relief may be granted.

4.  Waldrup's motion for temporary injunctive relief (Dkt. 33) and motion for permanent injunctive relief (Dkt. 39) are **DENIED** as moot.

5.  The remaining claims in this civil action are **STAYED** and **ADMINISTRATIVELY CLOSED** until the Court enters an order lifting the stay.

6.  Within 30 days after judgment is entered in the criminal proceedings against him, Waldrup may, if appropriate, file a motion to reinstate this case.  If Waldrup fails to a motion to reinstate within 30 days of the state court judgment, he may waive his opportunity to proceed with this lawsuit.

7.  All other pending motions, if any, are **DENIED** as moot.

The Clerk will provide a copy of this order to the plaintiff.

SIGNED at Houston, Texas, on _____ March 20 _____, 2023.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

23 / 23